**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**THE ESTATE OF DHULFIQAR K. MSEER**,

Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY**,

Defendant.

Case No. 3:22-cv-1954-SI

**OPINION AND ORDER**

James A. Cleary, THE GATTI LAW FIRM, 235 Front Street SE, Suite 200, Salem, OR 97302. Of Attorneys for Plaintiff.

Douglas F. Foley, FOLEY SAMPSON & NICHOLES, PLLC, 13115 NE 4th Street, Suite 260, Vancouver, WA 98684. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

The Estate of Dhulfiqar K. Mseer brings this action against Allstate Insurance Company (Allstate), asserting a claim for uninsured motorist benefits under Oregon Revised Statutes (ORS) § 742.502 and a claim for breach of contract. Plaintiff's claims arise from the fatal shooting of Mr. Mseer by unknown assailants while Mr. Mseer was operating a car as a rideshare driver, and Allstate's subsequent refusal to pay the benefits that Plaintiff contends that it is

entitled to recover under the applicable insurance contract. Before the Court is Allstate's Motion for Summary Judgment. For the following reasons, the Court denies Allstate's Motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## BACKGROUND

Mr. Mseer was insured under a commercial vehicle policy issued by Allstate that provided uninsured motorist (UM) benefits. *See* Foley Decl. ¶ 4 (ECF 16); *see also* Foley Decl. Ex. 2 (terms of Mr. Mseer's insurance policy). On December 12, 2022, Mr. Mseer was operating a vehicle as a rideshare driver when he was shot and killed by unknown assailants.[1] Evidence

[1] Although the evidence is unclear as to whether one or more individuals were responsible for shooting Mr. Mseer, the Court refers to the individual or individuals responsible as the "assailants" throughout its discussion.

related to this event is limited; the parties submit only the declaration of Portland Police Detective Rico Beniga, which states in full:

> I, Portland Police Detective Rico Beniga, do declare:
>
> 1. On the date of December 12th, 2022 the Portland Police Bureau, the Portland Fire Bureau and American Medical Response arrived to provide services and to subsequently investigate the incident in which the decedent Dhulfiqar K. Mseer was killed.
>
> 2. The perpetrators of this crime arrived at the incident location in two vehicles prior to Mr. Mseer's arrival. Mr. Mseer was shot at as he arrived at the same location. The shooter(s) were all outside of their vehicles when they began firing at Mr. Mseer.
>
> 3. The perpetrator(s) continued firing shots just prior to re-entering the vehicles and fleeing the scene in the same vehicles. There has been no information to date, to link Mr. Mseer to the suspect(s).
>
> I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

Beniga Decl. (ECF 16-1).

## DISCUSSION

Allstate moves for summary judgment against both claims. Allstate first asserts that there is no genuine dispute about the material facts in this case. Allstate contends that the undisputed evidence establishes that the unknown assailants were not operating a motor vehicle at the time in which they shot and killed Mr. Mseer. Allstate argues that this undisputed fact means that Plaintiff cannot carry his burden to establish coverage under Oregon's UM statute. Plaintiff responds that genuine issues of material fact preclude summary judgment.

**A. Applicable Law**

Under Oregon law, an insurer must provide to its policyholders UM coverage, subject to certain exceptions not relevant here. ORS § 742.502(1). Oregon law further requires insurers to provide to policyholders UM coverage that is "no less favorable in any respect" than the coverage specified in Oregon's UM statute.[2] ORS § 742.504. Oregon's UM statute requires an insurer to "pay all sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the . . . use of the uninsured vehicle." ORS § 742.504(1)(a). The issue at summary judgment is the scope of the statutory phrase "arising out of the . . . use of the uninsured vehicle."

The parties agree that the resolution of this issue is governed by the Oregon Court of Appeals' decision in *De Zafra v. Farmers Insurance*, 270 Or. App. 77 (2015). The plaintiff in *De Zafra* was a victim of a drive-by shooting who sought UM benefits from her insurer. The trial court granted summary judgment to the insurer on the ground that the plaintiff's shooting injury did not "arise out of" the use of an uninsured vehicle as required by the UM statute. *Id.* at 79. The Court of Appeals reversed, explaining that the broadness of the phrase "arising out of" in the UM statute reflects the legislative intent that the law require coverage for injuries beyond those "directly caused" by vehicle use, noting that "the Insurance Code should be liberally construed for the protection of the insurance-buying public." *Id.* at 85. The Court of Appeals explained that under a liberal construction, the phrase "arising out of" in the UM statute extends coverage to situations in which a party shows "that the offender's vehicle was used to approach with surprise

[2] The parties do not dispute that the operative policy provided Mr. Mseer with UM benefits exceeding those provided by statute.

and maximize the likelihood of injury" during an assault. *Id.* at 86. Such facts "would establish that the temporal and spatial distance between the use of the uninsured vehicle and the injury are sufficient to permit the conclusion that that the injury arose out of use of the vehicle." *Id.* (quotation marks omitted). The Court of Appeals thus remanded the case to the trial court to determine whether the plaintiff had carried her burden at summary judgment to show that her injury arose out of the use of an uninsured vehicle. *Id.*

In reaching its conclusion that the facts as presented could establish coverage under the UM statute, the Court of Appeals in *De Zafra* relied on the Oregon Supreme Court case *Carrigan v. State Farm Mutual Automobile Insurance*, 326 Or. 97 (1997). In *Carrigan*, the plaintiff sued under Oregon's analogous personal injury protection statute[3] for injuries he sustained during a carjacking. The plaintiff in *Carrigan* had agreed to give a stranger, later revealed to be an assailant, a ride in the plaintiff's vehicle. *Id.* at 99. After brandishing a gun, the assailant ordered the plaintiff to exit the vehicle, and the plaintiff complied. *Id.* The assailant also left the vehicle and ordered the plaintiff to get into the trunk of the car. *Id.* When the plaintiff could not fit into the trunk, he began to back away from the car. *Id.* The plaintiff was about 30

---

[3] The Court of Appeals in *De Zafra* determined that the analysis under *Carrigan* was directly applicable to its analysis of the UM statute, despite *Carrigan* interpreting the personal injury protection statute. The Court of Appeals explained:

> We cannot draw a meaningful distinction between the operative phrase in the UM statute—"arising out of"—and the operative phrase in the PIP statute—"resulting from"—which *Carrigan* construed. The benefits may be different. . . . But the causal link in the two statutes between an injury and a vehicle use is the same."

*De Zafra*, 270 Or. App. at 84 (citations omitted). Thus, the Oregon Supreme Court's discussion in *Carrigan* provides additional guidance for Court's determination in this case brought under the UM statute.

feet away from the car when the assailant shot him in the chest. *Id.* at 100. The assailant then drove away in the plaintiff's car. *Id.*

Applying a liberal construction of the Insurance Code in favor of protecting the insured, the Oregon Supreme Court determined that there was a sufficient link between the assailant's use of the car and the plaintiff's injury to permit the conclusion that the plaintiff's gunshot injury resulted from the use of that vehicle within the meaning of the personal injury protection statute. *Id.* at 105. The Oregon Supreme Court explained:

> Plaintiff argues that his gunshot injury resulted from the use of his car, because [the assailant] effectively took over the use of plaintiff's vehicle by coercion, ordered him to get out, and shot him moments after he left the vehicle. Plaintiff argues that the temporal and spatial distance between that use and his gunshot injury are insufficient to prevent the injury from "resulting from" that use. We agree. Under these facts, we conclude that plaintiff's injury arose as a consequence of the carjacking event that involved the "use" of the vehicle. Therefore, plaintiff's gunshot injury resulted from the use of a motor vehicle.

*Id.*

To summarize, *Carrigan* provides that coverage under the UM statute is established when the "temporal and spatial distance between the use of the uninsured vehicle and the injury are sufficient to permit the conclusion that that the injury arose out of use of the vehicle." *De Zafra* adds that the "temporal and spatial" proximity may be established by facts such as those that show "that the offender's vehicle was used to approach with surprise and maximize the likelihood of injury" during an assault, although the Court does not understand the relevant authorities to *require* that precise factual showing to satisfy the test.

**B. Analysis**

Allstate argues that the limited evidence available to date shows that Plaintiff cannot carry his burden to establish that the injuries sustained in the shooting death of Mr. Mseer arose

out of the use of an uninsured vehicle.[4] Plaintiff responds that the parties' factual investigation has been stymied by the Portland Police Bureau's refusal to provide information to the parties while the criminal investigation into the shooting death of Mr. Mseer remains ongoing. Plaintiff also argues that the evidence, although currently limited, demonstrates that Plaintiff can establish coverage under the UM statute. The Court addresses each argument in turn.

Plaintiff contends that Detective Beniga's refusal to cooperate with the parties' requests for discovery means that the parties currently (but only temporarily) lack facts crucial to determining whether Plaintiff can establish coverage under the UM statute. Plaintiff states that the parties jointly propounded interrogatories to Detective Beniga, but Detective Beniga's responses to the interrogatories were inadequate. *See* Cleary Decl. ¶¶ 4, 6 (ECF 19). Plaintiff explains that the parties had discussed subpoenaing Detective Beniga to obtain the information sought in the interrogatories, but that the parties have not done so. Cleary Decl. ¶¶ 6, 7.

Plaintiff represents that the attorneys for Detective Beniga and the City of Portland "indicated to the parties that they will not allow a deposition to be taken unless ordered by the Court because there is an ongoing investigation." Cleary Decl. ¶ 5. Plaintiff argues that by deposing Detective Beniga, the parties could learn the extent to which the assailants' vehicle was used to carry out the shooting, where the vehicle was in relation to the shooters, and whether the vehicle's use was a "critical element" of the assault. Plaintiff states that the Court has the authority to require Detective Beniga to cooperate with this civil matter.[5]

---

[4] The parties agree that the assailants' car is a "phantom vehicle" within the meaning of ORS § 742.504(2)(k)(C). As such, the assailants' vehicle is an uninsured vehicle under the UM statute.

[5] Although Plaintiff asserts that the Court has the authority to compel Detective Beniga's cooperation, Plaintiff does not request any specific assistance or action from the Court.

Allstate replies that Plaintiff has had ample opportunity to obtain the discovery it seeks and that the existing evidence is insufficient to show the required "temporal and spatial distance" between the use of the uninsured vehicle and Mr. Mseer's injury. Allstate argues that because it is Plaintiff's burden to establish coverage under the UM statute, and Plaintiff lacks sufficient evidence to carry that burden, the Court should award summary judgment in Allstate's favor.

Detective Beniga states in his declaration that the assailants arrived at the incident location in two vehicles "prior" to Mr. Mseer's arrival at the same location, that the shooters were outside of their vehicles when the shooting occurred, and that the assailants continued firing shots "just prior" to re-entering the vehicles and fleeing the scene. Plaintiff argues that like the perpetrator in *De Zafra*, this evidence shows that the assailants used the vehicles to arrive at and flee the scene, which Plaintiff contends establishes that the assailants used the vehicle or vehicles to maximize surprise and the likelihood of inflicting injury on Mr. Mseer. Moreover, Plaintiff argues that *Carrigan* demonstrates that an injury may be sufficiently causally linked to the use of a vehicle even if there is no showing that the assailant was physically located in the vehicle when the injury is inflicted.

When viewed in the light most favorable to Plaintiff, the Court agrees that the evidence provided by Detective Beniga—although limited—could establish the requisite temporal and spatial connection necessary for a reasonable jury to find that Mr. Mseer's injury arose out of the use of an uninsured vehicle. Drawing all reasonable inferences in Plaintiff's favor, Detective Beniga's statements could demonstrate that, at all relevant times, the assailants were physically close to the uninsured vehicles when the assault on Mr. Mseer occurred. Detective Beniga's statements reasonably demonstrate that the assailants used the uninsured vehicle to approach with surprise to maximize the likelihood of injury to Mr. Mseer. The Court concludes that the

existing evidence, although limited, creates a genuine issue of material fact as to whether Plaintiff can establish coverage under the UM statute. The Court therefore declines to grant summary judgment in Allstate's favor. If additional evidence is elicited, Allstate may file a second motion for summary judgment based on newly discovered facts.

## CONCLUSION

The Court DENIES Allstate's Motion for Summary Judgment, ECF 15. The Court directs the parties to contact the Courtroom Deputy to schedule a trial date.

**IT IS SO ORDERED**.

DATED this 30th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge